Florence Bremer on behalf of Mr. Delgado. May it please the court. Mr. Russell. As the court knows, the defendant was convicted of one count of engaging in the business of dealing firearms without a license. There were three other counts. They were dismissed, not before the court. There was a jury trial. The defendant was found in Phoenix, which is a residential reentry management program. There were some facts before the trial court regarding my client. Just a bit of background. He runs a computer business. He had never been in any trouble before. Had a girlfriend in Mexico, later became his wife, also has a child with her. He did not buy any guns in a gun show. They were purchased openly. And there was no warning by the ATF for him to not be selling these. He was arrested outside of a firearm store while the firearms were still inside. And after the arrest, on the steps of the courthouse, he received Miranda warnings the following day. Throughout the brief, the government says over and over again, none of these mistakes matter. There are several issues in the case. And the government says it doesn't matter. The evidence is overwhelming. There was an argument that he bought or attempted to buy 40 firearms, spent $85,000, possibly purchased multiples of the same gun. And the question, I think, is why would this evidence be overwhelming? Maybe it's circumstantial. Maybe you can take this and say, hey, there's some arguments about it. But to call it overwhelming and to say, well, now he's not entitled to reversal, I think is not correct. Does it have to be overwhelming? No, it doesn't have to be. It doesn't have to be. But in, I think, at least three of the- He stands convicted. Mm-hmm. And the case law tells us that we view the facts in the light most favorable to the government who prevailed at trial. So that, to me, that pretty much leaps over overwhelming, lack of overwhelming. Yeah. And if that, and Your Honor, that is, like, that is a hurdle that the appellant always has to cross. And if that's the, if that's it, and that's a line in the sand, nobody ever wins on appeal. But for the government to say, hey, don't really look at these issues, the evidence was overwhelming, I think the, if the court looks at the case, and I know the court will, I've done a lot of these, and I know how carefully the court looks at them, it's not overwhelming. It wasn't like- Why don't we focus on what you think your client, the errors in the case- Of course. At trial that affected your client's rights. Yeah. I'm going to start kind of in the middle of the brief, because I, to me, this was one that really was kind of sticking in my craw as I was preparing for this. And this was when the defense counsel moved for mistrial due to the government shifting the burden. And Agent Bort had testified and was asked about videos, photos, bills of sale, and he said, well, the defendant didn't give us videos, didn't give us photos, didn't give us bills of sales. He said the bills of sales were vacuumed up. The government says, well, there's a curative instruction, so it's fine. Oh, and the evidence was overwhelming, so it's fine. But it's not fine. If the evidence is supposed to be overwhelming, why is this testimony even being brought in? And once the jury hears it, how do you unring the bell? How do you unscramble the eggs? But isn't that the presumption of our instruction? So immediately after the answer, the district court gave a curative instruction, and then there was a break, and then when the trial resumed, the district judge instructed the jurors not to consider that testimony. And then there were instructions again at closing about the burden of proof. So this was said to the jurors multiple times. And that's how our system sort of works. And then we assume that the jurors follow the instructions that they're given. So why is it that here we should assume that's not the case and the jurors did not follow those instructions and instead place the burden on Mr. Delgado? Sure, Your Honor. So in this case, the instruction we believe was not adequate. Basically told the jury that the defendant does not have the burden of proof, that the government has the burden of proof. But putting the phrases, bills of sale, into the head of the jury was a catch-22 for the defendant. Because with that question, I sort of thought of it as along the lines of, when did you stop beating your wife? Doesn't matter what the answer is. When bills of sale are put into the jury's head, it indicates that there is business going on, which is what the government has to prove. But didn't your client say to the agents that he was reselling the firearms? He was purchasing multiples of the same firearm, up to 40 firearms, and then selling them. But there were also they had evidence. I don't know if they were suggesting he was going to buy a pad of invoices and write out invoices for people. So I guess I'm not understanding why that's so damning that when the district judge tells the jurors not only to disregard that, that the government has the burden of proof, and that they shouldn't consider it at all. Well, for what the government, the government doesn't have to prove that the defendant ever sold a firearm. It has to prove that he's in the business of selling a firearm, firearms. And so when you say bills of sale, it's indicating that there is a business. And then either answer that the agent gives... But don't you think the number of firearms involved and the amount of money involved was more likely to influence the jurors' verdict than the words bill of sale? It's possible. I mean, 40 firearms, $85,000, multiples of one firearm. It's possible, and that's what the government argued. But then why throw in language? Why throw in this other stuff like the bills of sale? If you really think all this is so overwhelming, why are you asking the agent if the defendant produced bills of sale? The answer to that is if the agent says, yes, he produced bills of sale, now, okay, is there a business? Or if he says, no, he didn't produce bills of sale, then it's, oh, is he hiding his business? Like, why are we even talking about this? If you're going to argue tax returns, you're going to argue the amount, why are we doing this? And there was the other things that the government brought up that are in the other issues. We can't go back and do an experiment where we do a trial where none of this extra stuff is brought in, the things that are argued in the brief, and see what the jury does. The only way we can do that is having this case overturned and the defendant getting a new trial. Was there also evidence that he was listing firearms for sale on a couple of different vendor sites? I don't remember what they're called, Arms something or other. Yeah, Arms Link or something. Something like that, yes. I don't spend a lot of time on those sites or any time on those sites, but there were a couple of websites where these firearms were being posted and sold, and they were being sold for more than they would cost if you walked into a retail dealer and purchased the firearm. Oh, absolutely. So all that evidence came in. Yes, that evidence did come in. But again, it's not illegal to list it. It's not illegal to sell it for more money. I know in the, I'm kind of skipping around to another issue, but I think this is important, is that when in the sentencing enhancement, when the court said, well, nobody would buy a firearm for more money when you could go into the shop and buy it, why? Where did that even come from in terms of evidence before the court? People list stuff on the internet all the time for more money. People will buy stuff in a thrift shop and list it for more money. But this isn't like a piece of used furniture. This is highly regulated industry, and there are a number of people who are prohibited possessors. And so there's issues and difficulties with loopholes and people obtaining firearms who are not supposed to have them. So the ATF and their agents have developed some expertise about how firearms are trafficked, correct? So I guess what you're getting at was the lay opinion of one of the agents that that was significant evidence, the amount of money for which the firearms were being purchased. Yes, yes. And that also goes back to one of the other arguments of this lay opinion really was expert testimony of saying things like, you wouldn't wear that shirt if you were shooting a gun. And you wouldn't fire a weapon in that way. Or the defendant seemed to sure have a lot of knowledge about the ATF rules. Like, why is all this brought in if you're just going to argue he purchased this amount of weapons, his bank records don't reflect it. It's all this other stuff that permeated the trial and made an unfair trial for my client where this case should be reversed and the conviction be vacated. I have just under four minutes left. Can I reserve unless there's any other questions? Yes. Yes, of course. Thank you very much. Good morning. May it please the court. My name is Craig Russell appearing on behalf of the United States. The government is asking this court to affirm the judgment and sentence. There are several issues before the court this morning. I'll start with the burden shifting issue. The question and answer here that was discussed earlier by defense counsel did not impermissibly shift the burden of proof. And there's two arguments here that I'd like to make. The first is the context of this questioning was in light of the opening statement by defense counsel where the defense was made clear that what they were going to defend the case on was the fact that the defendant was a collector or an enthusiast or he liked guns as opposed to someone who is in the business of dealing firearms. So with that backdrop, during the questioning of one of the ATF agents about the defendant's statement, they got into the issue of whether there was documentation of how the defendant disposed of all these firearms. And what was said was that the defendant may have had some documentation that it was vacuumed up at a car wash. And so that was the context of the prosecutor asking the ATF agent, well, did you ever receive any documentation about or including bills of sales? And so that was the context of that question. That question and answer in and of itself does not impermissibly shift the burden of proof. A prosecutor is entitled to comment upon a defendant's failure to present exculpatory evidence so long as it can't be construed as a comment on the defendant's failure to testify. And there was no such comment here. The context of the question was what happened during the investigation. It had nothing to do with what was happening at trial and had nothing to do with testifying. So that's the first argument that we have with burden shifting. The second, as the Court has already addressed and discussed, is that any error here was harmless. Immediately after this one single question and answer, the district court immediately reminded the jury of the burden of proof. After a brief recess, the district court came back and, erring on the side of caution, simply instructed the jury to disregard that one single question and answer. Of course, the prosecutor, during her closing statement, emphasized the government's burden of proof. Defense counsel did the same thing. And, of course, the district court, again, during jury instructions, emphasized the government's burden of proof and had a special curative jury instruction addressing this specific issue. And as the Court mentioned, we can presume that the jury followed the Court's instructions. So any error here was harmless. With respect to the question of whether there was improper expert testimony, in the opening brief, this issue is raised in a couple different places. So there's really three different areas of testimony that were complained about. So I'd like to address them just simply one at a time. The first issue dealt with testimony regarding tax returns. Well, these tax returns were admitted into evidence without objection. What happened after that is the ATF agent testified as to some facts arising out of these tax returns, dates of filings, amounts of income claimed. There was no opinion testimony as to the tax returns, lay, expert, or otherwise. The cases cited by the defendant in the reply brief can be distinguished. In those cases, there was expert testimony arising out of tax returns for issues such as tax evasion, tax fraud, tax consequences of a financial transaction. None of that occurred in this case. That was simply lay testimony as it relates to the tax returns. The testimony from the ATF agent about whether a defendant was a collector as opposed to dealing in the business of firearms, there was a couple things here that the agent testified to, but all fall under Rule 701 and was permissible lay opinion testimony. The agent, to this end, testified that the defendant was leaving factory stickers on his firearms. He had repetitive purchases of the same type of firearm. He wore nice clothing while shooting, and that he appeared to have been inexperienced in firing one of the weapons. I think they had a video at trial. And so all of these observations are simply permissible lay opinion testimony. It was all based upon the observation of the agent during the investigation. It was helpful for the jury to understand the testimony, and none of it required specialized technical or scientific knowledge that would have pushed this testimony into the realm of expert testimony under Rule 702. The same thing can be said with the ATF agent's testimony about whether the defendant appeared to be familiar with ATF rules and regulations. In this case, again, that was based upon the agent's own observations. He wasn't testifying as to ATF rules and regulations. He just simply testified that, hey, during my conversation with the defendant, he appeared to have some knowledge of our rules and regulations. Didn't the agent introduce some potentially inflammatory testimony, referencing grenades or explosives or things that are just not at issue at all in this case? So there was some reference there, but I think that in the context of how that testimony came to be, it wasn't the agent testifying that the defendant was engaged in that. The agent testified in response to the question that he had some knowledge of ATF restrictions in those areas. So there was. There was some, I think all parties were concerned about the answer to that question, and there was a curative jury instruction by the district court as related to that testimony. But, yes, I think it's fair to say there was concerns from all parties about the entirety of the answer from the ATF agent to that question. But, again, I would just emphasize to the court that there was. One, that issue really, in terms of being an inflammatory statement, that really wasn't raised in the brief, and I think it would have been cured by the district court's instruction to the jury. What did the district court say to the jury? I think she just, if memory serves, she just instructed them to disregard the entire question and answer line of questioning in that regard. There was also allegations before the court here today of certain Brady violations by the government. There was two specific areas of evidence that were, defendant claims were disclosed late. There's insufficient evidence in the record to support either of those allegations. Addressing first the allegation that there was late disclosure of border crossing, history of the defendant, that's not factually supported by the record. What happened here is during the first of three sentencing hearings, the defense counsel, who had substituted in after trial, made a comment that she was not sure if all the border crossing history had been disclosed, but the prosecutor could correct her if that was wrong. The prosecutor did correct her just a moment later and confirmed with, on the record, that all the defendant's border crossing history had been disclosed prior to trial. So was the border crossing history exculpatory? No, not at all, Your Honor. In fact, I was just going to get to that point. No. What happened in this case is after trial, the case agent with ATF created a summary document that incorporated the crossing history and correlated it to the defendant's firearms purchases. All of this was based upon information disclosed prior to trial. And as the court mentioned, this document was created to enhance the defendant's sentence. What the government tried to do in this case was they sought a sentencing enhancement based on illegally trafficking firearms to Mexico. Which they did not get, right? They did not get that. So this chart was not introduced at trial, is that correct? Correct. So it was used at sentencing to advocate for an enhancement that the district court did not apply. Correct. And so it wasn't helpful to the defendant. It wasn't graded material. It wasn't disclosed prior to trial because it did not exist prior to trial and was based upon information that was disclosed prior to trial, so it was simply cumulative. But yes, Your Honor, to your question, it was not, it was to enhance the defendant's sentence and wasn't helpful to the defendant, so it was not graded material. And in any event, it was disclosed well before the first sentencing hearing. The other piece of evidence that defendant claims was disclosed late was a recorded statement between agents and the defendants that occurred in the ATF office booking station in Tucson. The initial argument in the opening brief was that that actual recording was disclosed late. Well, we pointed out in our brief the government did that the defense counsel, the record doesn't support that. Defense counsel during the trial proceedings indicated that he was familiar with the contents of that recording and that he had discussed redactions with the prosecutor prior to trial. I thought the complaint was that the defense didn't have the transcript. Am I correct on that? That is now the argument that's raised in the reply brief, that that wasn't clear in the opening brief. But yes, that's been clarified. And so with respect to that, what happened is after the close of evidence, the parties were discussing some issues arising out of closing statements, and the defense counsel made an offhand statement that he did not receive Exhibit 97 until the morning of trial. Well, that is factually correct, but what the prosecutor made clear is, yes, Exhibit 97 was either the transcript or a portion of the transcript of that recording that was handed, but that was handed to him as an exhibit. So the exhibit, the transcript marked as an exhibit, was handed to defense counsel the morning of trial. But the actual raw transcript was disclosed before trial, not on the morning of. And they had the tape, didn't they? They did. They had the tape and the transcript. It was just the transcript marked as an exhibit. The record is not clear if it was the entire transcript or part of it that was marked as an exhibit. Was it admitted into evidence? No. What occurred was that the prosecutor used it to refresh the agent's recollection, but it was never admitted as an exhibit. I'll just address briefly the issue regarding the allegation of tampering with evidence. What happened in this case, the defendant's alleging that the government manipulated or somehow put together some of the firearms that were presented at evidence in trial. Some background here, some context is important. What happened is during the investigation, towards the end, ATF agents were able to go out to some local firearms dealers in Tucson and intercept some guns that the defendant had ordered but had not yet received. Some of these weapons were physically brought into court and admitted to evidence during trial. It just so happens that with respect to three of these firearms, when they were ordered by the defendant, he ordered them as two separate pieces, as a barrel that matched a lower receiver. So with respect to just these three firearms, the defendant ordered them from the same FF license dealer. At the same time, they just came as two separate pieces. And when trial was going on, the prosecutor tried to admit a photo of those three firearms. It was Exhibit 53. And when the agent was testifying as the foundational questions asked to that photo, he candidly testified that he wasn't sure if the dealer put the two pieces together or if ATF put the two pieces together before the photo was taken. And so with that caveat, the district court admitted the photo of the three firearms. A few moments later at trial, some of them, I think it was ten, actual physical firearms were brought into the courtroom and admitted into evidence. The foundational testimony there from the ATF agent was that these were the firearms. They're in the same condition as when they were seized from the local firearms dealers, and they hadn't been tampered or manipulated with, with the exception of just rendering them safe to be brought into court. And so there's nothing in the record. And assembled. Yes. I don't think there's anything in the record to support that the ATF had somehow assembled these weapons from a parts caterer. The weapons that were actually brought into court, the testimony in the record shows that they were in the same condition as when they were seized. And what's happening, though, in the argument in the reply brief is extrapolating the statements made by the ATF agent as it relates to the photo of the three guns and extrapolating it to all the other weapons that were physically brought into court. And there's just nothing in the record to support that. There's nothing in the record to support that. Other than the two pieces being put together, there's nothing in the record to support that the government tampered or somehow manipulated this evidence. The defendant also raised an issue that I wanted to talk about briefly was the defendant complains that the district court improperly limited cross-examination of one of the ATF agents during trial. What happened here is on direct examination, the ATF agent testified that the defendant stated he got rid of one of his firearms because it had been recalled by the manufacturer and that it was jamming. The ATF agent also testified that when he looked at the manufacturer's website, that weapon had not been recalled. On cross-examination, defense counsel tried to elicit testimony to the effect that of whether the defendant had told the ATF agent if he had fired this weapon. Well, there was a hearsay objection to that question because it was an exculpatory statement by the defendant, which was hearsay. The defendant tries to get around the hearsay rule by resorting to the rule of completeness. But there was nothing unfair or misleading about that follow-on statement about whether the defendant had fired the firearm because the ATF agent, in his direct examination, never addressed one way or the other whether the defendant had shot that gun. So there was nothing unfair or misleading that would have given rise to the operation of the rule of completeness. So unless the court has any questions for me, the government asks that this court affirm. All right. Thank you. Thank you. Thank you very much. Just as a reminder of something that I had talked to my client about, there's also a motion to stay the sentence pending appeal that is still pending before this court. When I talked to my client, I said, it's almost moot because he's almost done with his sentence, but if it was granted, it would save him a couple months. Because I only have a couple minutes, I was going to focus mainly on the confrontation clause issue. So in that scenario, the defense was prevented from cross-examining regarding firing of the weapon. And if he was allowed to cross-examine, then the whole statement would have come in. And the court said, well, your client could testify about it. So that's the problem. But the client should not have to testify about it. And I came up with sort of a silly example, but if there was a statement where a defendant said, you may say I did it, but I didn't, and the agent just said, well, he said he did it, and there was not allowed to be the cross-examination. But that would clearly be a rule of completeness problem, which seems to be different from what happened here where the agent didn't say one way or the other, whether Mr. Delgado said he had fired the firearm. So I understand your point. Of course, he doesn't have to testify. But if he doesn't choose to do so, that doesn't mean that he can bring in exculpatory statements through hearsay. Well, it's not just bringing in the exculpatory statement. It's to complete the statement. But how was what the agent said incomplete? They never said he told me he fired the gun or he told me he didn't fire the gun. He said the gun was jamming, and I checked on the website, and it wasn't a malfunction that was happening with this gun, something along those lines. So it gives the impression that the defendant never fired it when the defendant told him he fired it. Because if the agent is saying, well, the website says— But did he say the defendant told him he fired it? He said it was jamming? I mean, so you would assume he fired it or maybe he didn't fire it. I don't know which impression it gives. And that's why the testimony of what the defendant actually told him would have completed that, rather than the jury speculating about what was going on regarding that statement. So why—I still am lost on this—why this is so critically important. He said the gun was jamming. The agent testified to that and then said, I checked on the website, and this was not listed as one of the problems with the gun. So there's no testimony from the agent about he told me he fired it or he told me he didn't fire it. So how does the rule of completeness come in? Your client wants to add something else to the discussion that was not testified about, that wasn't part of—it wasn't anything omitted. There wasn't anything to be added to what the agent said. Sure. I understand, but I don't think that's the case. I think it needed to be in there to make it complete, and then that was what we were arguing. I understand the Court may disagree, but in our mind, that needed to come in in order for the entire statement to be complete. Are there—I have about 20 seconds. Any other questions? Okay, thank you very much. Thank you very much. Thank you, counsel, for your arguments this morning. They were very helpful.
judges: HAWKINS, BADE, DESAI